UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
KENT F. GAUGLER,

                    Plaintiff,

                                                    **REPORT AND**
                                                    **RECOMMENDATION**

           -against-                                CV 01-1769 (SJF)(WDW)

TOWN OF EAST HAMPTON; CHRISTOPHER
L. ANDERSON, individually and in his capacity
as Police Detective; STEVEN M. DOANE,
individually and in his capacity as Police Detective;
KENNETH BROWN, individually and in his capacity
as Police Officer; WESLEY PAYNE, individually and
in his capacity as Police Sergeant; TODD H. SARRIS,
individually and in his capacity as Police Captain;
THOMAS L. SCOTT, individually and in his capacity
as Police Chief; WILLIAM McGINTEE, individually
and in his capacity as Police Lieutenant; RICHARD J.
BALNIS, individually and in his capacity as Police
Officer; EDWARD ECKER, individually and in his capacity
as Police Lieutenant; JOHN CLAFLIN, individually and in
his capacity as Police Lieutenant; KEVIN A. SARLO,
individually and in his capacity as Police Sergeant;
ROBERT A. REICH, individually and in his capacity
as Police Detective; PETER SCHMITT, individually and in
his capacity as Police Officer; THOMAS MILLER,
individually and in his capacity as Police Officer, and
PETER MURRAY, individually and in his capacity
as Police Officer,
                                        Defendants.
----------------------------------------------------------X
**WILLIAM D. WALL, United States Magistrate Judge:**

           By order dated October 28, 2004, District Judge Feuerstein referred to the undersigned,

for report and recommendation, the defendants' summary judgment motion.  For the reasons set

forth herein, the undersigned recommends that the motion be granted.

                                        **BACKGROUND**

           This action was commenced in March 2001, and an Amended Complaint was filed in

April 2003. In it, the plaintiff, Kent Gaugler, asserts claims pursuant to 42 U.S.C. §1983, based on alleged violations of his Fourth Amendment right to be free from unreasonable searches (Ex. A[1], Am. Compl.¶¶ 46-49); his Fourth Amendment right to be free from unreasonable seizure (Id. ¶¶ 50-54); and a Second Amendment right to possess a rifle collection (id. ¶¶56-59). The defendants, in their Verified Answer to the Amended Complaint, deny that any violations occurred and assert five affirmative defenses. Ex. B, Am. Ver. Ans. to Am. Compl.

The claims arise from events that occurred in March 1998. Not surprisingly, the parties' accounts of those events vary somewhat. The defendants assert that around midnight on March 22-23, defendant Richard Balnis received a call from dispatch to investigate a report of shots being fired in the vicinity of Gennessee Court and South Fulton Streets in Montauk, New York, the site of the plaintiff's residence. Def's Rule 56.1 Statement ¶1. According to the defendants, Balnis, accompanied by defendant Peter Schmitt, went to the home of the person who had complained about the shots, and then to the Gaugler residence. Id. ¶¶2-4. According to the plaintiff, Balnis went directly to Gaugler's residence, and never took a statement from the person who had called the police. Pl's Rule 56.1 Counterstatement ¶¶1-3.

The parties agree that the officers went to Gaugler's home at some point and spoke to him about the complaint that gunshots had been heard. Gaugler testified at his deposition that he told them he had not heard any gunshots, that he was, in fact, cooking dinner at that time, and that the officers refused to leave, even though he told them to arrest him or leave. Ex. E 5:25-7:18. Balnis testified at his deposition that Gaugler told him that he and a friend had "fired several

---

[1]All of the Exhibits referenced in this Report and Recommendation are annexed to the Affidavit of Daniel K. Cahn in support of the defendants' motion.

rounds off in the yard" and admitted that he used to do such things all the time before neighbors moved in. Ex. E 8:10-17. He also allegedly told Balnis that he had 155 guns and rounds in the house. Ex. E 8:16-17. Gaugler reported the conversation quite differently. He testified that "after about five minutes of trying to get them to leave and them just not leaving my doorway, I mean, it was either slam the door in their faces or say, 'What do you want from me? What do you want me to tell you? That me and a friend were here shooting AK-47s and blowing stars out of the sky? You want me to tell you that I drove here drunk?'" Ex. C 8:15-23.

Mr. Gaugler also testified that he heard the shots and knew who had fired them. Indeed, the gist of his testimony was that the person who had fired them was at the Gaugler home when they were fired, had "accidentally" loaded the gun in Gaugler's house, and went outside to empty it. Ex. C 10:22-12:18. Gaugler had earlier testified that he told Officers Balnis and Schmitt that he had not heard any gunshots. Id. 6:21-22.

On March 24, 1998, the police applied for and obtained a search warrant, signed by East Hampton Town Justice Roger Walker. Ex. F The search warrant instructed the officers to seize "a rifle capable of rapid fire and any ammunition including, but not limited to, rifle cartridges or shells or casings for same." *Id.* at 3. The search warrant was executed that same day, and, pursuant to the Suffolk County District Attorney's instructions, the officers seized Gaugler's various weapons, ammunition and fireworks, along with spent shell casings found on the property. Def's Rule 56.1 Stmt. ¶¶ 15-18. Later that day, Gaugler was arrested at his place of business and charged with Criminal Possession of a Weapon in the Fourth Degree, Reckless Endangerment in the Second Degree, Unlawful Dealing in Fireworks and Discharging a Weapon within 500 feet of a Dwelling. Ex. L.

On September 2, 1999, Gaugler was convicted in the East Hampton Town Justice Court on three of the four charges. Def's Rule 56.1 Stmt. ¶20; Ex. C. He was sentenced to a jail term of 360 days, of which he served approximately 110 days before being released. *Id.* On December 18, 2000, Gaugler's convictions were reversed by the Appellate Term, Second Department, on the ground that the accusatory instruments were jurisdictionally defective in that factual allegations "failed to establish each and every element of the offences charged." *Id.* at ¶21; Ex. M. After the New York Court of Appeals denied the Suffolk County District Attorney's Office's application for leave to appeal in March 2001, Gaugler's firearms were returned to him. *Id.* at ¶¶22-23. This lawsuit was filed on March 22, 2001.

## DISCUSSION

### A. Summary Judgment Standards

"'Summary judgment is appropriate where there are no genuine disputes concerning any material facts, and where the moving party is entitled to judgment as a matter of law.'" *Jamaica Ash & Rubbish Removal Co. v. Ferguson,* 85 F. Supp. 2d 174, 180 (E.D.N.Y. 2000) (quoting *In re Blackwood Assocs., L.P.* 153 F.3d 61, 67 (2d Cir. 1998) and citing Fed. R. Civ. P. 56(c) and *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). In deciding a summary judgment motion, the district court must resolve all ambiguities and draw all reasonable inferences in the light most favorable to the opposing party. *See Castle Rock Entm't, Inc. v. Carol Publ'g Group, Inc.,* 150 F.3d 132, 137 (2d Cir. 1998). If there is evidence in the record as to any material fact from which an inference could be drawn in favor of the non-movant, summary judgment is unavailable. *See Holt v. KMI-Continental, Inc.,* 95 F.3d 123, 128 (2d Cir. 1996). The applicable substantive law determines which facts are critical and which are irrelevant. *See Anderson v.*

*Liberty Lobby,* 477 U.S. 242, 248 (1986).

The trial court's responsibility is "'limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution.'" *B.F. Goodrich v. Betkoski,* 99 F.3d 505, 522 (2d Cir. 1996) (quoting *Gallo v. Prudential Residential Servs., L.P.,* 22 F.3d 1219, 1224 (2d Cir. 1994)). When, however, there is nothing more than a "metaphysical doubt as to the material facts," summary judgment is proper. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). "Rather, there must exist 'specific facts showing that there is a genuine issue for trial' in order to deny summary judgment as to a particular claim." *Jamaica Ash & Rubbish,* 85 F. Supp. 2d at 180 (quoting *Celotex,* 477 U.S. at 322).

A moving party may obtain summary judgment by demonstrating that little or no evidence may be found in support of the non-moving party's case. "When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." *Marks v. New York Univ.,* 61 F. Supp. 2d 81, 88 (S.D.N.Y. 1999). Where, however, evaluation of the non-movant's proof rests on the credibility of the non-movant versus the movant, a genuine issue exists and summary judgment cannot be granted. "Where an issue as to a material fact cannot be resolved without observation of the demeanor of witnesses in order to evaluate their credibility, summary judgment is not appropriate." *See* Wright, Miller & Kane*, Federal Practice and Procedure,* Vol. 10A, §2726 (quoting Advisory Committee Notes to1963 amendment of Rule 56(e)).

**B.) Probable Cause/Qualified Immunity:**

The defendants' threshold argument in support of the summary judgment motion rests on qualified immunity and the question of whether there was probable cause for the search warrant. The plaintiff, it must be noted, has not based any cause of action on the issue of lack of probable cause, and suggests in only two paragraphs of the Amended Complaint that probable cause was absent, one of which refers to the search and the other to Gaugler's arrest. Ex. A ¶¶26 & 41. Nonetheless, the defendants argue that because probable cause existed, they are entitled to qualified immunity on both causes of action based on execution of the warrant, that is, the "media ride-along" claim (first cause of action) and the illegal seizure claim (second cause of action). The undersigned does not agree that probable cause for the warrant would shield the defendants from these warrant-based claims, which are based on faulty execution of the search and seizure pursuant to the warrant, not issuance of the warrant, but addresses the issue because the parties have done so.

The defense of qualified immunity "shields government officials from liability for civil damages as a result of their performance of discretionary functions, and serves to protect government officials from the burdens of costly, but insubstantial lawsuits." *Lennon v. Miller*, 66 F.3d 416, 420 (2d Cir. 1995) (citations omitted). The doctrine of qualified immunity is intended to strike a balance "'between the need, on one hand, to hold responsible public officials exercising their power in a wholly unjustified manner and, on the other hand, to shield officials responsibly attempting to perform their public duties in good faith from having to explain their actions to the satisfaction of a jury.'" *Locurto v. Safir*, 264 F.3d 154, 162-63 (2d Cir. 2001) (quoting *Kaminsky v. Rosenblum,* 929 F.2d 922, 924-25 (2d Cir. 1991)). Qualified immunity is

not only a shield from liability, but also from the burdens of trial. *Id.* at 163.

The qualified immunity standard requires a two prong inquiry. The first question is whether the right claimed to have been violated was clearly established at the time the defendants acted. Gaugler had a clearly established right to be free from unreasonable search and seizure. Where, as here, the right is clearly established, the second prong of the inquiry asks whether the defendants' conduct was still objectively reasonable given the circumstances. *See Blue v. Koren*, 72 F.3d 1075, 1084 (2d Cir. 1995). The issuance of a search warrant, which depends upon a finding of probable cause, creates the presumption that it was objectively reasonable for the officers to believe that the search was supported by probable cause, for the purpose of a section 1983 action alleging lack of probable cause for issuance of a search warrant. *Martinez v. City of Schenectady*, 115 F.3d 111, 115 (2d Cir. 1997).

"Probable cause for a search warrant is established if the 'totality-of-the-circumstances' indicate a probability of criminal activity." *United States v. Diaz,* 176 F.3d 52, 110 (2d Cir. 1999) (quoting *Illinois v. Gates,* 462 U.S. 213, 230-32 (1983)). "[A] determination of probable cause is accorded great deference and will be upheld so long as the . . . judge had a substantial basis for concluding that a search would uncover evidence of wrongdoing." *Id.* (internal quotations and citations omitted). "A reviewing court should not interpret supporting affidavits in a hypertechnical, rather than a commonsense, manner. The resolution of doubtful cases should be largely determined by the preference to be accorded to warrants." *United States v. Martin,* 157 F.3d 46, 52 (2d Cir. 1998). Any doubt regarding the existence of probable cause must be resolved in favor of upholding the warrant. *See United States v. Salameh,* 152 F.3d 88, 112 (2d Cir. 1988) (internal quotations and citations omitted). Here, the warrant application was signed

by East Hampton Justice Roger Walker, who implicitly found probable cause, and the warrant on its face provided a substantial basis for Justice Walker's conclusion that a search would uncover evidence of wrongdoing. *See* Ex. F.

A plaintiff can, however, demonstrate that his rights were violated if the officers applying for the warrant "knowingly and intentionally, or with reckless disregard for the truth, made a false statement or omitted material information and that such false or omitted information was necessary to a finding of probable cause." *Martinez,* 115 F.3d at 115. Gaugler claims that there are material issues of fact as to whether the warrant applicant - defendant Richard Balnis - "intentionally or recklessly made false statements or omitted material information that was necessary to the finding of probable cause for the search warrant." Pl's Mem. in Opp. at 11. In order to successfully challenge a search warrant based on an attack on the allegations in a supporting affidavit, the challenger "must show by a preponderance of the evidence that the affidavit contained false statements that were material on the issue of probable cause." *United States v. Wapnick,* 60 F.3d 948, 955 (2d Cir. 1995) (internal citations omitted). In reviewing such challenges, "a court should put aside allegedly false material, supply any omitted information, and then determine whether the contents of the 'corrected affidavit' would have supported a finding of probable cause." *Martinez*, 115 F.3d at 115 (quoting *Soares v. Connecticut*, 8 F.3d 917, 920 (2d Cir. 1993)).

Here, the plaintiff contends that the alleged admissions by Gaugler used to support the warrant application were taken out of context and that no statement had been taken from the unnamed informant who allegedly stated that "Kent Gaugler had fired at least twenty (20) rounds from a rifle capable of rapid fire." Pl's Mem. in Opp. at 13; and see Ex. F ¶4. The plaintiff

further argues that ambiguity as to the "handwritten statements" of witnesses "raises doubt as to their veracity and begs the question of whether the judge who signed the Warrant was . . . misled into believing that they were handwritten by the "'witnesses.'" *Id.* The plaintiff also claims that Detective Balnis may have misled the judge who signed the warrant into believing that Balnis had ballistics training and that the defendants "omitted any mention of the enmity between Detective Doane and Mr. Gaugler, an enmity based on Doane's 'interest' in both the former Mrs. Gaugler and the current Mrs. Gaugler." *Id.*

None of these claims raises material issues of fact as to the existence of probable cause. As a threshold matter, the allegation that Detective Doane was "interested" in the two Mrs. Gauglers is unsupported hearsay, is irrelevant in light of the fact that Balnis and an assistant district attorney, and not Doane, made the warrant application, and it will not be considered.

Turning to the substance of the warrant application, the court notes that the application makes clear that five named witnesses heard gunshots coming from the vicinity of Gaugler's home and reported them to the police. Although there may be some ambiguity about whether the witnesses' statements were in their own handwriting or the officers', there is no evidence whatever that the witnesses did not actually make the statements, or that they were false. The application also stated that Balnis believed that a rapid fire rifle and ammunition for such a rifle were at Gaugler's residence. At his deposition Gaugler did not deny owning the type of firearms sought by the warrant and there is no suggestion that Balnis's claim in the application that he believed such firearms to be at the residence was false. As to the allegation based on Balnis's ballistics training, it is not material to the issue of probable cause for the warrant.

The only allegation that has some arguable substance is that the claim in the application

that Gaugler had informed Balnis and Schmitt that "he had in fact fired several rounds from his AK-47, a semi-automatic rifle" was false. Ex. F ¶4. At his deposition Gaugler testified that he made the statement that he had fired the shots in a way that could not be construed as a confession and that it was misrepresented in the application. According to Gaugler, what he actually said was "What do you want me to tell you? That me and a friend were here shooting AK47s and blowing stars out of the sky?" Ex. C 8:19-21. An issue of fact does exist as to whether Gaugler told the officers he had shot the AK47 or whether he phrased it as he testified at his deposition, but that issue of fact is not material to the issue of whether there was probable cause for the search warrant. If the court puts aside the allegedly false information, the application remains more than sufficient to "warrant a person of reasonable caution in the belief that an offense ha[d] been committed," based on the five witness statements and the fact that Gaugler owned weapons such as the ones described. *Martinez,* 202 F.3d at 634. As noted earlier, "[p]robable cause for a search warrant is established if the 'totality-of-the-circumstances' indicate a probability of criminal activity," and the totality of circumstances set forth in the application meets this standard. *Diaz,* 176 F.3d at 110.

Thus, the defendants are entitled to qualified immunity on any claim that there was no probable cause for the warrant to issue. That does not mean, however, that they are necessarily entitled to qualified immunity on the plaintiff's claims based on, not the issuance of the warrant, but its execution. The court thus turns to those claims.

**C.) The First Cause of Action:**

The plaintiff asserts generally in his first cause of action that his Fourth Amendment right to be free from unreasonable search was violated. The text of the claim specifies that the

violation arose from the defendants' allowing the media to enter plaintiff's property. Gaugler asserts that "such undisclosed and uninvited 'embedded media' in the execution of search warrants" violated law that was clearly established at the time. Ex. A ¶¶46-49. The defendants argue that there was no media ride-along, and that, in any event, the law regarding "media ride-alongs" was not clearly established until the Supreme Court decided *Wilson v. Layne,* 526 U.S. 603 (1999), on May 24, 1999, and that even if the facts as alleged by the plaintiff are taken as true, the defendants are entitled to qualified immunity on the first cause of action. Def's Mem. in Supp. at 6-9.

In *Wilson,* the law enforcement defendants brought media personnel into the plaintiff's home to observe and record the execution of an arrest warrant, and the plaintiffs claimed that their Fourth Amendment rights had been violated. 526 U.S. at 607-08. The Court held that "it is a violation of the Fourth Amendment for police to bring members of the media or other third parties into a home during the execution of a warrant when the presence of the third parties in the home was not in aid of the execution of the warrant." *Id.* at 614. The Court also held, however, that the defendants were entitled to qualified immunity because, at the time the underlying events took place, it was "not unreasonable for a police officer to have believed that bringing media observers along during the execution of an arrest warrant (even in a home) was lawful." *Id.* at 615 (parentheses in original).

The plaintiff argues that the law regarding media ride-alongs was clearly established in the Second Circuit several years before *Wilson,* and before the execution of the search warrant at issue, citing to *Ayeni v. Mottola,* 35 F.3d 680 (2d Cir. 1994). In *Ayeni,* federal officers brought a crew from CBS into the plaintiffs' apartment to film the execution of a search warrant. The

plaintiffs, the wife and son of the suspect, brought a *Bivens* action, claiming that their Fourth Amendment rights had been violated. The court found the conduct of the defendants to be unreasonable because the warrants at issue neither requested nor permitted the presence of a television camera crew, and did not indicate that video and sound recording was necessary to execution of the warrant. 35 F.3d at 686. The court noted that it "has long been established that the objectives of the Fourth Amendment are to preserve the right of privacy to the maximum extent consistent with reasonable exercise of law enforcement duties and that, in the normal situations where warrants are required, law enforcement officers' invasion of the privacy of a home must be grounded on either the express terms of a warrant or the implied authority to take reasonable law enforcement actions related to the execution of the warrant." *Id.*

The undersigned agrees with the plaintiff to the extent that he argues that *Ayeni* was the established law in the Second Circuit regarding the bringing of media observers into a private home during the execution of a search warrant in March of 1998. The undersigned does not, however, agree with the plaintiff's sweeping statement that *Ayeni* held that "media ride-alongs violated the Fourth Amendment." Pl's Mem. in Opp. at 14-15. As the Second Circuit recognized, media presence at warrant executions might, under some limited circumstances, be permissible. Moreover, *Ayeni*, like *Wilson*, focused on the entry into a private home, not mere presence in the vicinity of the warrant execution.

Here, there is no material issue of fact presented as to whether the media entered the Gaugler residence. The defendants assert that the media did not enter the home, and rely on the depositions of two of the defendants - Detective Anderson and Lieutenant McGintee - as well as that of Mr. and Mrs. Gaugler, to support their claim. Def's Rule 56.1 Stmt. ¶19. The plaintiff,

although he argues that the deposition transcripts of those individuals "fail to support the Defendants' claim with any certainty" (Pl's Rule 56.1 Stmt. ¶25), does not point to any evidence that would raise an issue of fact as to their entry <u>into the house</u>.  There appears to be no dispute that the media were present in the area when the warrant was executed, but the "pictures taken of Mr. Gaugler's home contemporaneously with the execution of the Warrant," (Pl's Mem. in Opp. at 16) were apparently pictures of the outside of the house (*see* Karen Gaugler Dep., Ex. D 26:3-7), and present no issue of fact as to whether the media entered the house.

The plaintiff also argues that Mrs. Gaugler, who testified that the media did not enter the house (Ex. D 26:9-11), was not present for the entire search.  Pl's Mem. in Opp. at 16.  Mrs. Gaugler may not have been there when the police arrived, but she testified that no one could enter the house until she got there, because she had the keys and no one could get in without them.  Ex. D 17:7-18.  And, the idea that an issue of fact is demonstrated by her leaving the property to go to the deli to get a drink, thus creating an opportunity for the media to enter the house without her knowledge, is far too tenuous, given the absence of any other evidence that the media went into the residence.

The plaintiff also argues that an issue of fact exists as to whether the police informed the media that the search of the plaintiff's home would be taking place.  Pl's Mem. in Opp. at 16.  Any issue of fact as to that is irrelevant, however, inasmuch as there does not appear to be any established law prohibiting the police from conveying such information.  Certainly, *Ayeni* does not so hold.  Nor is there any basis for finding that allowing the media into the street where Gaugler lived violated his Fourth Amendment rights.  Because there is no indication that either of these circumstances amounted to a clearly established constitutional right in March 1998, the

defendants are entitled to qualified immunity on such claims.

As noted, the clearly established law at that time prohibited the police from bringing the media into a private home during the execution of a warrant, barring some limited circumstances. Because there is no evidence in the record that the media entered the Gaugler home in violation of the Fourth Amendment, the undersigned recommends that summary judgment be granted on the first cause of action. A moving party may obtain summary judgment by demonstrating that little or no evidence may be found in support of the non-moving party's case. "When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." *Marks,* 61 F. Supp. 2d at 88.

**D.) The Second Cause of Action:**

The plaintiff's second cause of action alleges a violation of his right to be free from unreasonable seizure. Gaugler claims that the search warrant executed by the defendants specified that they were to look for and seize only "a rifle capable of rapid fire and any ammunition including but not limited to, rifle cartridges or shells or casings for same," but that the defendants "unreasonably and unlawfully seized ALL of Mr. Gaugler's collection of rifles and shotguns . . . in abrogation of Mr. Gaugler's Fourth Amendment right to be free from such unreasonable seizures, and also seized personal papers and materials[2]." Ex. A ¶¶51-52 (capitals in original). In other words, the plaintiff claims that the defendants who executed the warrant seized items beyond the scope of that warrant.

---

[2]The plaintiff limits his discussion, in his opposition to the motion, to seizure of the gun collection, and does not indicate any issues of material fact regarding papers or other personal materials.

The defendants do not deny taking more than the items specified in the warrant, but do deny that Mr. Gaugler's Fourth Amendment rights were thereby violated. They argue that the seizure was under the direction of the Suffolk County District Attorney, who found that the plaintiff had previously pled guilty to the "serious offense" of Second Degree Menacing involving a "deadly weapon, dangerous instrument or what appears to be a pistol, revolver, rifle, shotgun, machine gun or other firearm" (N.Y. Penal Law §120.14(1)), and that he was therefore barred by New York Penal Law §265.01(4) from owning a rifle or shotgun. Def's Mem. in Supp. at 10-12; Def's Rule 56.1 Stmt. at ¶15. Thus, the defendants argue, it was reasonable of them to both charge Gaugler with Criminal Possession of a Weapon in the Fourth Degree and to seize his collection of rifles and shotguns pursuant to the search warrant. Def's Mem. in Supp. at 12. Even if the District Attorney was wrong, they argue, the individual defendants are still entitled to qualified immunity because it was objectively reasonable for the officers to believe that their acts did not violate any clearly established right. *Id.* The defendants further argue that the District Attorney's Office advised the police to seize all of Gaugler's rifles and shotguns because the officers were not qualified to determine whether certain weapons were capable of rapid fire. Def's Mem. in Supp. at 12-13.

The plaintiff's opposition to these arguments rests largely on his contention that the warrant lacked probable cause (see Pl's Mem. in Opp. at 17-18), an argument that the undersigned has already rejected. The second cause of action thus arises not from an allegedly invalid warrant, but rather from an alleged seizure of items beyond the scope of a valid warrant, and the court weighs the parties' arguments from that perspective.

The Fourth Amendment protects against unreasonable searches and seizures. *See*

*Graham v. Connor,* 490 U.S. 386, 395 (1989).  A seizure alone does not constitute a Fourth Amendment violation, however; the question is whether the seizure was reasonable under the circumstances, an inquiry that entails the weighing of various factors.  *Soldal v. Cook County,* 506 U.S. 56, 61-62 (1992).  "'[R]easonableness is . . . the ultimate standard' under the Fourth Amendment, . . . [and] the reasonableness determination will reflect a 'careful balancing of governmental and private interests.'"  *Soldal,* 506 U.S. at 71 (quoting *Camara v. Municipal Court of San Francisco,* 387 U.S. 523, 539 (1967) & *New Jersey v. T.L.O.,* 469 U.S. 307, 341 (1985)).  Here, the defendants argue that seizure of the gun collection was reasonable because the District Attorney told them to seize it based on Gaugler's prior conviction. The plaintiff  argues that material issues of fact exist as to the reasonableness of the seizure.

Setting aside the alleged issues of fact relating to the existence of probable cause for the warrant, the material issues of fact that the plaintiff asserts include: "whether the defendants made bad faith representations to the District Attorney when obtaining his recommendations as to" the seizure.  Pl's Mem. in Opp. at 17.  The plaintiff questions "whether the animus between Detective Doane and Mr. Gaugler based upon the unfortunate crossing of their romantic paths led to misrepresentations about the severity of Mr. Gaugler's conviction."  The plaintiff does not explain how the "severity" of his conviction could have been "misrepresented."  It is an undisputed fact that Gaugler pled guilty to Menacing in the Second Degree with a weapon, and that fact would not be changed by any representations the police may have made to the District Attorney about the facts underlying Gaugler's plea.

Nor has the plaintiff propounded any other material issue of fact regarding the seizure. The plaintiff argues that there are "manifest questions of fact as to the good faith basis" for the

defendants' claim that they "were unable, due to a lack of ballistics training, to differentiate between antique bolt-action rifles and automatic weapons capable of rapid fire."  Pl's Mem. in Opp. at 18.  While issues of fact may well exist as to the officers' lack of ballistics training, they are not material to the resolution of the plaintiff's second cause of action.  It is undisputed that Gaugler pled guilty to Menacing in the Second Degree with a weapon.  It is also undisputed that the defendants were advised by the Suffolk County District Attorney to seize Gaugler's weapons because he was barred from possessing them based on his earlier conviction.  The reasonableness of the seizure and the availability of qualified immunity to the individual defendants rest not on any disputed issues of fact, but on issues that can be determined as a matter of law.

Generally, if the scope of a search "exceeds that permitted by the terms of a validly issued warrant . . . , the subsequent seizure is unconstitutional without more."  *Horton v. California,* 496 U.S. 128, 140 (1990).  The Supreme Court has noted that "seizures of effects that are not authorized by a warrant are reasonable only . . . [where] there is probable cause to associate the property with criminal activity."  *Soldal,* 506 U.S. at 69.  The defendants' argument is that there was probable cause to associate the gun collection with the criminal activity of Gaugler's possessing those guns, when he was barred from doing so by his earlier conviction.  As a threshold matter, then, the court must determine whether, as a matter of law, Gaugler's prior conviction barred him from possessing certain firearms.

As earlier noted, the defendants argue that it was reasonable to seize Gaugler's gun collection because they had probable cause to believe that he was guilty of criminal possession of a weapon in the fourth degree.  Under New York law, a person is guilty of criminal possession of a weapon in the fourth degree when he "possesses a rifle or shotgun and has been convicted of a

felony or other serious offense." N.Y. Penal Law §265.01(4). All of the circumstances surrounding the March 24, 1998 search and seizure support the conclusion that the defendants had probable cause to believe that Gaugler possessed a rifle or shotgun. The next question, therefore, is whether they had probable cause to believe that Gaugler had been convicted of a felony or other serious offense. Gaugler pled guilty to Menacing in the Second Degree under Penal Law §120.14(1). *See* Ex. J. Menacing in the Second Degree is a Class A misdemeanor, not a felony. Thus, the court must determine whether, under New York law, Menacing in the Second Degree is a "serious offense" under Penal Law §265.01(4).

The defendants state that the District Attorney interpreted Gaugler's 1994 conviction to be a "serious offense" under New York Penal Law §265.00 (17), which provides that "Serious Offense" means . . . illegally using, carrying or possessing a pistol or other dangerous weapon." Def's Mem. in Supp. at 11. Gaugler pled guilty to Penal Law §120.14(1), which involves the use of a "deadly weapon, dangerous instrument, or what appears to be a pistol, revolver, rifle, shotgun, machine gun or other firearm . . ." The statute does not specify "dangerous weapon," and the question thus becomes whether any of the implements listed in the statute to which Gaugler pled guilty are dangerous weapons, as that phrase is used in Penal Law §265.00 (17).

The phrase "dangerous weapon" used in Penal Law §265.00 (17) to define a serious offense is not itself defined in the Penal Law, but "dangerous instrument," as defined in New York's Penal Law, means "any instrument, article or substance . . . which, under the circumstances in which it is used, attempted to be used or threatened to be used, is readily capable of causing death or other serious injury." N.Y. Penal Law §10.00(13). This definition is readily applicable to the offense to which Gaugler pled guilty in 1994, and the District Attorney's

conclusion that a violation of Penal Law §120.14(1) is a serious offense under Penal Law §265.00 (17) was correct, as a matter of law.

Putting together all of the parts of this puzzle, the inevitable conclusion is that the defendants had probable cause to believe that Gaugler both possessed a rifle or shotgun and had been earlier convicted of a serious offense, and that he was thus barred from possessing those weapons and was guilty of criminal possession of a weapon in the fourth degree pursuant to Penal Law §265.01(4). It was, therefore, reasonable as a matter of law for the defendants to seize Gaugler's collection of rifles and shotguns. *See Soldal,* 506 U.S. at 69 ("[S]eizures of effects that are not authorized by a warrant are reasonable . . . [where] there is probable cause to associate the property with criminal activity."). Moreover, even if the District Attorney erred in his interpretation of the Penal Law, the individual defendants, acting under his advice and supervision, are entitled to qualified immunity, inasmuch as their conduct did not violate any clearly established right and it was objectively reasonable for them to believe that their acts did not violate Gaugler's rights.

The undersigned also finds that the defendants were justified in retaining the gun collection until after the New York Court of Appeals denied the District Attorney's petition to appeal. The guns were evidence in the charge of criminal possession of a weapon, and they were returned soon after the New York Court of Appeals denied the District Attorney's application. It was not unreasonable for the defendants to retain them so long as the possibility of a retrial existed.

For these reasons, the undersigned recommends that summary judgment be granted on the second cause of action.

**E.) The Third Cause of Action:**

In his third cause of action, the plaintiff alleges that his gun collection contained no illegal weapons, and that the Second Amendment protects his "right to have and keep such a collection as an individual right separate and apart from any right residing in the states to create and maintain a militia, and the seizure of the rifles was in violation of those individual Second Amendment rights." Ex. A at ¶58. The defendants argue that the Second Amendment does not protect individual rights or give rise to a private cause of action, and that the claim must be dismissed as a matter of law. Def's Mem. in Supp. at 14-15.

The Second Amendment provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." Courts have found that "[i]t is settled constitutional law that the Second Amendment is not a source of individual rights," but, rather, guarantees a collective right. *Dew v. United States,* 1998 U.S. Dist. LEXIS 4176, *18-19 (S.D.N.Y. Mar. 27, 1998). *See also United States v. Miller,* 307 U.S. 174 (1939); *Love v. Pepersack,* 47 F.3d 120, 124 (4th Cir. 1995) ("Since [*United States v. Miller*], the lower federal courts have uniformly held that the Second Amendment preserves a collective, rather than an individual, right."); *United States v. Warin,* 530 F.2d 103, 106 (6th Cir. 1976) ("It is clear that the Second Amendment guarantees a collective rather than an individual right."); *Hamilton v. Accu-Tek,* 935 F. Supp. 1307, 1318 (E.D.N.Y. 1996) (same).

The plaintiff argues that Justice Thomas's concurring opinion in *Printz v. United States*, 521 U.S. 898, 938-39 (1997), throws this "settled law" into question. In his opinion, Justice Thomas noted that the Supreme Court had not "had recent occasion to consider the nature of the substantive right safeguarded by the Second Amendment," but might do so "at some future date."

*Id.* This observation does not qualify as a change in the law, and it certainly can not be said that the existence of a private right of action under the Second Amendment was well-established in March 1998 so as to undermine the defendants' qualified immunity defense on this cause of action. Thus, the undersigned recommends that the defendants be granted summary judgment on the third cause of action, inasmuch as no private right of action has been recognized under the Second Amendment.

**F.) Punitive Damages:**

Because the undersigned recommends the dismissal of all of the plaintiff's causes of actions, the issue of punitive damages need not be addressed.

**OBJECTIONS**

A copy of the Report and Recommendation is being sent by the Court to all parties. Any objections to this Report and Recommendation must be filed with the Clerk of the Court with a courtesy copy to the undersigned within 10 days of service. Failure to file objections within this period waives the right to appeal the District Court's Order. *See* 28 U.S.C. §636 (b) (1); Fed. R. Civ. P. 72; *Beverly v. Walker,* 118 F.3d 900, 902 (2d Cir. 1997); *Savoie v. Merchants Bank,* 84 F.3d 52, 60 (2d Cir. 1996).

Dated: Central Islip, New York
           February 15, 2003

                                         s/ William D. Wall
                                        WILLIAM D. WALL
                                        United States Magistrate Judge